JAMES CLIFFORD ROGERS, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Rogers v. Commissioner
Docket No. 705-72.
United States Tax Court
T.C. Memo 1974-4; 1974 Tax Ct. Memo LEXIS 313; 33 T.C.M. (CCH) 14; T.C.M. (RIA) 74004; January 14, 1974, Filed. James Clifford Rogers, pro se.
Robert J. Shilliday, Jr., for the respondent. FORRESTER
MEMORANDUM FINDINGS OF FACT AND OPINION
FORRESTER, Judge: Respondent has determined a deficiency in petitioner's Federal income tax for the year 1966 in the amount of $27,119.32 and additions to the tax under the provisions of sections 6653(a) (negligence) and 6651(a) (failure to file) of the Internal Revenue Code of 1954, in the respective amounts of $1,355.97 and $6,675.81. The issues remaining for our decision are whether petitioner had gambling losses in 1966 in excess of $11,654, whether petitioner is subject to the penalty for negligence or intentional disregard of rules and regulations and whether petitioner 2 is subject to the penalty for failure to file his return timely for 1966 because of willful neglect *314 and not due to any reasonable cause.
FINDINGS OF FACT
Some of the facts have been stipulated and are so found.
James Clifford Rogers, hereinafter called petitioner, resided in Orlando, Florida, at the time he filed his petition herein. His individual income tax return for the year here in issue was due to be filed on April 15, 1967, but was filed on May 7, 1970, after respondent had started a delinquent return investigation of him. Petitioner resided in Orlando, Florida, on the last date mentioned above.
Petitioner lived in Cliffside Park, New Jersey, from 1958 until he moved to Orlando, Florida, near the end of July 1966. Petitioner now concedes that his total taxable wages for the year in issue were $2,798.55 instead of $510.15 as reported on his delinquent return and respondent admits, and has given credit for, $353.79 Federal income tax withholdings on this amount.
For the months of March through July 1966, petitioner regularly attended horse races at Yonkers Raceway 3 and Roosevelt Raceway in New York and made numerous bets. His winnings which were in excess of $600 per race were reported on information returns by those raceways and totaled $56,106.80 for the above *315 five-month period.
Petitioner kept no records of any kind regarding either his winnings or his lossesbut he d__ ;+:?,_- ,;, losing tickets totaling concedes that he did have losses in that amount.
Petitioner's net unreported income from wagering during the year in issue was $44,452.80.
OPINION
Petitioner admits to the $56,106.80 gross winnings which were reported by the raceways on their information returns and he also admits that he had many winning tickets which paid less that $600 and were, therefore, not reported, but he contends that the 1,151 losing tickets which he saved were only a small portion of his total losing tickets and that, in fact, he incurred a net loss from wagering during the year in issue. This is consistent with the delinquent return which he filed and on which he stated "gambling losses exceeded winnings - net was a minus amount." But as noted above, petitioner kept no records of any kind other than the 4 1,151 losing tickets and his sole support for his net loss contention is his own testimony of this conclusion and his own testimony that he must have lost more than he won since he had borrowed $2,500 from a loan shark, who was never named, and that *316 he was "broke" when he left New Jersey and moved to Florida near the end of July 1966.
Petitioner's position is closely identical to that of the taxpayer in Daniel F. Donovan v. Commissioner, 359 F.2d 64 (C.A. 1, 1966), affirming a Memorandum Opinion of this Court. There, too, the taxpayer kept no records of either his winnings or losses and his winnings were a matter of record only because of the information returns filed by the racetrack. Taxpayer there contended that he must have lost more than he won because his bank account steadily declined.
It was our conclusion, and the conclusion of the Circuit Court in that case, that the taxpayer's proof fell far short of sustaining his burden of proof (Rule 142, Tax Court Rules of Practice and Procedure) with respect to the claimed deduction and our conclusion in the instant case is necessarily the same. 5 Petitioner contends that he had many more losing tickets than the 1,151 which he saved, but he also admits that he had winnings of less than $600 in some races which were, therefor, not reported by the raceways and for which respondent has not charged him.
On balance, we feel that respondent has been extremely *317 generous in allowing petitioner the full total of the 1,151 losing tickets as a deduction in the amount of $11,654,for it is common knowledge that disgruntled bettors discard thousands of losing tickets immediately following each race.
In view of petitioner's understatement of his gambling and salary income, his failure to keep any records other than 1,151 losing tickets and his failure to produce any evidence at trial, we must sustain respondent's determination under section 6653(a).
Petitioner's return for the taxable year was filed over three years late and the record is silent as to any showing of reasonable cause, or that such lateness was not due to willful neglect. Consequently, we must sustain respondent's determination under section 6651(a). Decision will be entered under Rule 155. Pursuant to the determination of the Court, as set forth in its Memorandum Findings of Fact and Opinion filed January 14, 1974, it is ORDERED and DECIDED: That the following statement shows the petitioner's income tax liability for the taxable year 1966: Statutory deficiency $19,980.81 Reduction in deficiency due to understatement of tax withheld 291.50
Net deficiency
19,689.31 Section 6651(a) addition to the tax
$ 4,906.76 Section 6653(a) addition to the tax 999.04
*318